

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00255-CV

_____

SAN JUANITA AND MAX GRIEGO, APPELLANTS

V.

BAPTIST SAINT ANTHONY'S HEALTH SYSTEM, A/K/A BAPTIST SAINT
ANTHONY'S HOSPITAL CORPORATION, APPELLEE

On Appeal from the 181st District Court
Potter County, Texas
Trial Court No. 97233-B; Honorable John B. Board, Presiding

February 5, 2015

## MEMORANDUM OPINION

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Pursuant to section 74.351 of the Texas Civil Practices and Remedies Code, the trial court dismissed the claims of Appellants, San Juanita (Janie) Griego and Max Griego, against Appellee, Baptist Saint Anthony's Health System, a/k/a Baptist Saint

Anthony's Hospital Corporation, due to their failure to timely file an expert report.[1]  By three issues, Appellants assert (1) their negligence action does not raise a health care liability claim, (2) the trial court erred by retroactively applying the Texas Supreme Court's holding in *Texas West Oaks Hospital, LP v. Williams*,[2] and (3) the trial court erred by failing to grant them an extension of time within which to file an expert report.

By a supplemental, post-submission brief filed with leave of this Court, Appellants raise two additional issues which are essentially identical: (1) whether the trial court erred in granting Appellee's motion to dismiss because that motion was not timely filed and (2) whether Appellee waived the right to seek a dismissal under Chapter 74 by not filing its motion to dismiss until after the deadline for motions under the trial court's scheduling order.

With regard to the three issues originally raised, Appellees contend the trial court properly classified Appellants' claims as health care liability claims, did not err in retroactively applying *Texas West Oaks Hospital,* and could not statutorily grant an extension of time to file a conforming expert report.  Concerning the two issues raised by the supplemental briefing, Appellee contends Appellants did not properly preserve their arguments for appeal and the trial court implicitly modified its scheduling order by ruling on Appellee's motion to dismiss.  We affirm.

---

[1]  *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(b)(2) (West Supp. 2014).  Section 74.351(b) provides, "[i]f, as to a defendant physician or health care provider, an expert report has not been served within the period specified by Subsection (a), the court, on the motion of the affected physician or health care provider, shall . . . enter an order that . . . (2) dismisses the claim with respect to the physician or health care provider, with prejudice to the refiling of the claim."

[2] *Tex. West Oaks Hosp., LP v. Williams,* 371 S.W.3d 171, 177 (Tex. 2012).

BACKGROUND

In January 2009, Appellants filed suit against Appellee alleging that on May 27, 2007, while acting as Appellee's employee, Janie sustained injuries when she was assaulted by a patient at the hospital. According to Appellants' pleadings, in the course of her employment as a nurse technician, another nurse asked Janie to sit with a patient in the neurology unit. When she entered the patient's room, the patient was sitting/standing on the edge of the bed and had pulled the "Call Button/Light" off the wall. His IV and catheter were entangled.

Janie told the patient she was going to help him back into bed. He responded that he wanted to go home. As she was helping him into bed, he started assaulting her. She cried for help but the patient continued assaulting her until he knocked her down onto the floor. He then got on top of her and continued his assault. According to Appellants' allegations, Janie continued to yell and scream for approximately fifteen to twenty minutes before hospital security arrived and restrained the patient. Janie was then taken to the emergency room of the hospital where she was treated for injuries to her neck, spine and back. As a result thereof, Appellants asserted Appellee was negligent in failing to (1) maintain a safe workplace, (2) adequately train Janie for the task assigned, (3) provide adequate assistance, (4) warn her of unreasonable dangers and risks of harm to which she was exposed while in the employment of Appellee, (5) warn her of the defects and safety hazards present in her work environment, and (6) warn her of the patient's condition prior to her entering his room.[3]

---

[3] There was no patient's chart outside the patient's room. Among other things, the patient's medical records indicated he had a possible psychiatric disorder, engaged in violent outbursts, was periodically disoriented, suffered from Alzheimer's, was restless, cursed, was confused, was non-

On February 9, 2009, Appellee filed an answer generally denying those allegations and asserting both special exceptions and affirmative defenses. Thereafter, the parties engaged in general discovery. More than two years later, on May 16, 2011, the trial court signed an agreed scheduling order and discovery control plan that required "all motions" (other than motions in limine) be filed on or before August 12, 2011. On that deadline, Appellants filed their *First Amended Petition* and Appellee filed its *Traditional and No-Evidence Motions for Final Summary Judgment*. After a flurry of discovery, including the filing by both parties of motions pertaining to the summary judgment motions and related discovery, on January 22, 2013, more than four years after the original petition was filed and over seventeen months after the motions deadline, Appellee filed, for the first time, its *Motion to Dismiss for Failure to Serve Section 74.351 Expert Report* on the basis that Appellants never filed an expert report pursuant to Chapter 74 of the Texas Civil Practice and Remedies Code.[4] In filing its motion to dismiss, Appellee never filed a motion to modify the scheduling order or otherwise seek leave of the trial court to file that motion.

Appellee's motion to dismiss relied heavily on the then recent opinion of the Texas Supreme Court in *Texas West Oaks Hospital v. Williams,* wherein it held that it was the gravamen of the claim and not the status of the claimant that determines

---

compliant, complained about wanting more drugs (his toxicology screen showed positive for a variety of illegal substances), had a history of drug and alcohol abuse, engaged in inappropriate behavior, was hostile and suffered from dizziness.

[4] An "expert report" means a "written report by an expert that provides a fair summary of the expert's opinions as of the date of the report regarding applicable standards of care, the manner in which the care rendered by the physician or health care provider failed to meet the standards, and the causal relationship between the failure and the injury, harm, or damages claimed." TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(r)(6) (West Supp. 2014).

4

whether a particular claim falls within the provisions of the Texas Medical Liability Act.[5]
*See Tex. West Oaks Hosp., LP v. Williams,* 371 S.W.3d 171, 177 (Tex. 2012).
Appellants responded by contending their claim was not a health care liability claim and that, if it was, they should have the opportunity to file an expert report because the *Texas West Oaks Hospital* case marked a dramatic change in the law concerning whether claims similar to those being asserted by Appellants were, in fact, health care liability claims. In responding to Appellee's motion to dismiss, Appellants never challenged the filing of the motion on the basis that it was untimely. Having considered the motion to dismiss, as well as Appellants' response, and all other briefing, the trial court issued its order dismissing Appellants' claims with prejudice. This appeal followed.

For purposes of logical analysis, before addressing Appellants' original issues, we must first address the two issues raised by their post-submission supplemental briefing.

SUPPLEMENTAL ISSUES ONE AND TWO—TIMELINESS OF MOTION TO DISMISS

Appellants contend the trial court should not have considered Appellee's motion to dismiss because that motion was not timely filed in accordance with the trial court's scheduling order. Effectively, Appellants contend Appellee waived its right to present a section 74.351(b) motion to dismiss because it delayed the filing of that motion until

---

[5] TEX. CIV. PRAC. & REM. CODE ANN. §§ 74.001-.507 (West 2011 and Supp. 2014). The current version of the Texas Medical Liability Act applies to suits filed on or after September 1, 2013. Act of May 24, 2013, 83rd Leg., R.S., ch. 870, § 3(b), 2013 Tex. Gen. Laws 2217. Because this suit was filed before September 1, 2013, the former version of the Act applies to the instant appeal. *See* Act of May 18, 2005, 79th Leg., R.S., ch. 635, § 2, 2005 Tex. Gen. Laws 1590. Accordingly, all references to "§" or "section" are references to the Code prior to the 2013 amendment.

after the deadline for filing motions and almost four years after their original appearance.

In general, as a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court by a timely request, objection, or motion that stated the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a). Here, Appellants did not present to the trial court any arguments concerning the timeliness of the motion to dismiss. They did not argue procedural bar, waiver, estoppel, or laches. Accordingly, the trial court was never afforded the opportunity to consider their complaints before ruling on the motion to dismiss. Because Appellants failed to raise this matter below, they waived any complaint concerning the timeliness of Appellee's motion to dismiss. Supplemental issues one and two are overruled.

## FIRST ISSUE—HEALTH CARE LIABILITY CLAIM

Appellants contend their pleadings do not state a health care liability claim because their action is premised on Appellee's failure to warn Janie about the patient's mental and physical condition. As such, they assert their claim is a garden-variety negligence claim and exempt from the strictures of Chapter 74 of the Texas Civil Practice and Remedies Code. We disagree.

A "health care liability claim" is a cause of action (1) against a health care provider or physician (2) for treatment, lack of treatment, or other claimed departure from accepted standards of medical care, or health care, or safety or professional or

6

administrative services directly related to health care, (3) which proximately results in injury to or death of a claimant, whether the claimant's claim or cause of action sounds in tort or contract. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.001(a)(13) (West Supp. 2014). No one disputes whether Appellants' claims meet the first and third elements of a health care liability claim; instead, their appeal centers on the second element, i.e., whether their cause of action is premised on "a departure from accepted standards of . . . safety or professional or administrative services directly related to health care." Thus, we are left to determine whether Appellants are asserting a health care liability claim when they contend that Appellee failed to maintain a safe workplace by failing to (1) adequately train Janie for the task assigned, (2) provide adequate assistance, (3) warn her of unreasonable dangers and risks of harm to which she was exposed while in the employment of Appellee, (4) warn her of the defects and safety hazards present in her work environment, and (5) warn her of the patient's condition prior to her entering his room.

In *Texas West Oaks Hospital,* a psychiatric technician and caregiver, Frederick Williams, was asked to perform a one-on-one observation of a patient with a history of paranoid schizophrenia including manic outbursts and violent behavior. *Tex. West Oaks Hosp., LP,* 371 S.W.3d at 174-75. While he was engaged in that observation, a physical altercation occurred resulting in the patient's death and injuries to Williams. He brought suit against his employer, the mental health hospital, alleging injuries arising out of inadequate training, supervision, risk-mitigation and safety in a mental health facility. The Supreme Court held that Williams's claim against his employer was a health care liability claim because he sought damages for injuries caused by "departures from accepted standards of safety." *Id.* at 186 ("the safety component of health care liability

7

claims need not be directly related to the provision of health care"). Equally applicable to Appellants' arguments in this case, the Supreme Court further stated, "[a]n expert report detailing the departure from standards would still be relevant in a case, such as this, where a non-patient alleges that the health care provider's deviations from accepted standards led to his injury. As explained, expert testimony is necessary to specify the departure from accepted standards leading to the injury." *Id.* at 190.

More recently, in *Psychiatric Solutions, Inc. v. Palit*, 414 S.W.3d 724 (Tex. 2013), a treatment facility mental health professional/psychiatric nurse was injured at work while physically restraining a psychiatric patient during a behavioral emergency and, as a result of those injuries, asserted an action for negligence against the facility. *Id.* at 726. Palit asserted "he was injured 'as a result of improper security of a dangerous psychiatric patient' because the treatment facility 'failed to provide a safe working environment and failed to make sufficient precautions for [his] safety.'" *Id.* The Supreme Court held Palit's claim was a health care liability claim because he alleged the treatment facility departed from the accepted standards of safety and expert health care testimony was necessary to support or refute his allegations. *Id.*

Because Appellants' claims, like those in *Texas West Oaks Hospital* and *Psychiatric Solutions, Inc.,* are claims that Appellee failed to provide a safe working environment and failed to take the proper precautions for an employee's safety, we see no basis for distinguishing those cases from the case at bar. As such, we conclude that Appellants' claims are health care liability claims subject to the requirement of a timely filed expert report. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a) (West Supp.

8

2014). *See also Psychiatric Solutions, Inc.*, 414 S.W.3d at 726; *Tex. West Oaks Hosp.*, *LP*, 371 S.W.3d at 186. Appellants' first issue is overruled.

SECOND ISSUE—RETROACTIVE APPLICATION OF *TEXAS WEST OAKS HOSPITAL, LP V. WILLIAMS* AND *PSYCHIATRIC SOLUTIONS, INC. V. PALIT*

Appellants next contend that we should only apply the Supreme Court's holdings in *Texas West Oaks Hospital* and *Psychiatric Solutions, Inc.* prospectively because the rule espoused by the two cases was not clearly foreshadowed in 2009 when Appellants' claims were filed and the parties had already engaged in discovery without expert reports. While we are not entirely unsympathetic to Appellants' predicament, we conclude the holdings therein should be applied retrospectively.

Although the Supreme Court can determine whether to apply a particular holding prospectively, the general rule is that its decisions apply retroactively. *See Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen,* 952 S.W.2d 454, 454 (Tex. 1996). Whether a Supreme Court decision applies retroactively or prospectively only is a matter within the discretion of that Court, and we must apply a Supreme Court decision retroactively unless that Court exercises its discretion to modify the application of that general principle. *Jackson v. Williams Brothers Construction Co.,* 364 S.W.3d 317, 323-24 (Tex. App.—Houston [1st Dist.] 2011, pet. denied). Thus, when the applicable law changes during the pendency of an appeal because of an opinion by the Supreme Court, we must render our decision in light of the change in the law. *Continental Casualty Company v. Baker,* 355 S.W.3d 375, 386 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Because neither *Texas West Oaks Hospital* nor *Psychiatric Solutions, Inc.* contain language evidencing the intent of the Supreme Court to apply its holdings prospectively only, we conclude the Court intended the opinions to apply retrospectively. *Picket v. Texas Mutual Insurance Co.,* 239 S.W.3d 826, 833 (Tex. App.—Austin 2007, no pet.). Furthermore, both cases merely interpret the provisions of the Medical Liability Act as enacted. They do not adopt a new statement of the law or overrule a previous interpretation of the statute. Accordingly, Appellants' second issue is overruled.

THIRD ISSUE—EQUITABLE EXTENSION OF TIME

Finally, Appellants alternatively assert the trial court erred by denying their motion for an extension of time to file an expert report. They contend that because an expert report was not required when the suit was filed and only became a requirement after the Supreme Court rendered its decision in *Texas West Oaks Hospital,* then the trial court should have granted them an extension of time within which to file an expert report. Appellee contends Appellants are not entitled to an extension because no report was timely filed and a party may obtain an extension only if a timely filed report has been found to be deficient.

Although section 74.351(c) authorizes a court to grant a thirty-day extension to the deadline for filing an expert report, such an extension is only available to allow a claimant to cure deficiencies in a report that has been timely served.[6] *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (c) (West Supp. 2014); *Badiga v. Lopez*, 274

---

[6] Section 74.351(c) states that "[i]f an expert report has not been served within the period specified by Subsection (a) [i.e., not later than the 120th day after the date each defendant's original answer is filed] *because elements of the report are found deficient*, the court may grant one 30-day extension to the claimant in order to cure the deficiency." *See* TEX. CIV. PRAC. & REM. CODE ANN. § 74.351(a), (c) (West Supp. 2014) (emphasis added).

S.W.3d 681, 684-85 (Tex. 2009) (holding that "in the absence of a timely report, the trial court cannot properly grant an extension under section 74.351"); *Leland v. Brandal*, 257 S.W.3d 204, 207 (Tex. 2009) (holding that statute permits a thirty-day extension when an intermediate appellate court finds a report to be deficient that the trial court considered adequate); *Ogletree v. Matthews*, 262 S.W.3d 316, 320 (Tex. 2007) (holding that statute allows trial court to grant one thirty-day extension to cure a deficient report). The thirty-day extension rule is not applicable when no report has been filed. *Id.* at 320 n.2 (stating that "[i]n this important respect, a deficient report differs from an absent report").

We review a trial court's ruling on a motion for extension of time to file an expert report under an abuse of discretion standard. *Walker v. Gutierrez*, 111 S.W.3d 56, 62 (Tex. 2003); *Russ v. Titus Hosp. Dist.*, 128 S.W.3d 332, 336 (Tex. App.—Texarkana 2004, pet. denied). The trial court commits an abuse of discretion by acting without reference to any guiding rules and principles. *Downer v. Aquarmarine Operators, Inc.,* 701 S.W.2d 238, 241-42 (Tex. 1985).

Here, Appellants filed no report. Because there was neither an expert report served within the statutory deadline nor a report where the elements of that report were found to be deficient, the trial court had no discretion to grant a thirty-day extension. Under these circumstances, the trial court did not abuse its discretion by denying Appellants' motion for an extension of time within which to file an expert report. Appellants' third issue is overruled.

CONCLUSION

The trial court's order is affirmed.

Patrick A. Pirtle
Justice